THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RANDALL D. HUNT, Defendant-Appellant.

Third District    No. 78-170

Opinion filed July 19, 1979.—Rehearing denied August 8, 1979.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Randall D. Hunt appeals from his conviction and

sentence following a jury trial for the offense of attempted burglary. He was sentenced to a determinate prison term of 3 years and 9 months.

Defendant raises two issues on this appeal, (1) whether the defendant was denied effective assistance of counsel as a result of the representation, by his appointed attorney, of his co-defendant brother, also, and (2) whether the defendant was denied equal protection and due process because he was not informed of the specific sentences which the court would impose under the old and new sentencing laws, prior to defendant's election as to which law he wished the court to apply in imposing sentence.

The record indicates that in the early morning hours of January 5, 1978, the Pekin police sergeant, Dick Ratliff, was on a routine patrol in downtown Pekin when he saw a man at the back door of the Three Sister's Cafe, apparently attempting to break in. That man, when he saw the squad car in which Ratliff was riding, immediately ran between two buildings. Ratliff then radioed that he had seen a burglary in progress and gave a description of the man he had seen. That description was of a young man, approximately 5'6" tall, with long "blondish" hair and wearing a blue parka-type coat, with a fur collar. Within a short time, another police officer, responding to the radio message, arrested defendant Randall Hunt and his brother Terry Hunt several blocks away. Randall Hunt, when arrested, was wearing a blue parka-type coat with a fur collar. The police found that the door at the restaurant had been damaged in an apparent attempt of someone to enter and, also, found a pry bar lying nearby in the hedge.

Sergeant Ratliff, at the trial of the two brothers for attempted burglary, positively identified defendant Randall Hunt as the man he had seen at the door of the Three Sisters Cafe in the early morning hours of January 5. Ratliff testified that he saw only one individual at the door and, further, that he did not see Terry Hunt until after Terry had been arrested by another officer. During his cross-examination, defense counsel for the Hunt brothers focused upon Ratliff's description of the hair color given on the night of the attempted burglary. Ratliff testified, initially, that both brothers had blondish colored hair, but he admitted, upon further questioning, that Terry Hunt was more blond than his brother. When pressed further, Ratliff stated that defendant Randall Hunt's hair had blond streaks in it, but that he would classify it as brown. Ratliff stated that the artificial lighting in the area may have accounted for his perception of the man's hair as being blond. Later, in the course of the trial, when the State attempted to introduce Terry Hunt's gloves in evidence, defense counsel objected. The gloves apparently had a white chalky substance on them similar to that found on the door of the cafe. Similar objection was made to the State's attempt to introduce articles of

clothing taken from Randall Hunt, which also apparently bore the same white substance. Objections to the physical evidence were sustained because no scientific comparisons had been made of the substance on the door and the substance found on Terry Hunt's glove and Randall Hunt's clothing.

At the close of the case for the State, defendant's trial counsel moved for a directed verdict of acquittal on behalf of both defendants. The motion as to Terry Hunt was granted, but the motion as to defendant Randall Hunt was denied. Thereupon, the defense rested without presenting any evidence. At this time, the State moved to exclude Terry Hunt from the courtroom during the closing argument. Objection by defense counsel was overruled, and Terry Hunt was excluded. Defense counsel did request that the court not tell the jury why Terry Hunt was no longer in the courtroom.

In the closing argument to the jury, defense counsel argued that the State had failed to prove that Randall Hunt was the man seen at the door by Sergeant Ratliff. He emphasized to the jury the presence in the area of defendant's brother Terry Hunt, and stated, "Where did Terry Hunt materialize from * * * out of nowhere? * * * was Terry Hunt out here in the middle of this nine square block area just waiting to connect up * * * another very important fact which establishes that there was a severe doubt as to whether that person behind the building was Randy Hunt at all * * *." Defense counsel also, additionally, stressed the discrepancy between the hair color given in the description ("blondish") and the fact that defendant Randall Hunt had brown hair, arguing that the sergeant was mistaken in his identification of the defendant.

After the jury had deliberated for four hours, it returned a verdict of guilty as to defendant Randall Hunt. At the sentencing hearing, the trial court informed defendant of the difference between the new and old sentencing laws, either of which defendant could elect to be sentenced under. (See Ill. Rev. Stat. 1977, ch. 38, par. 1008—2—4(b).) Defendant elected to be sentenced under the new determinate sentencing act, and the trial judge sentenced him to 3 years and 9 months in accordance with the joint recommendation of defense counsel and the prosecution.

■■ On the first issue raised by defendant, as to whether defendant Randall Hunt had received effective assistance of counsel because of his attorney's dual representation of both defendant and his brother, the State, among other things, contended that defendant had waived this issue by failing to raise the issue in his post-trial motion. The record does indicate that appointed counsel did not object to his own joint representation of the brothers and did not assert as error, in his post-trial motion, his own ineffective assistance as counsel in representing both defendants. The State argues that the issue has been waived by the failure

of defense to object or raise the issue in the post-trial motion. It is also noted that the brothers did not object to joint representation of the two of them by the single attorney. Under the circumstances in this case, where no independent counsel had entered the case who could have been expected to detect a conflict, trial counsel might have overlooked it. (*People v. Mathes* (1979), 69 Ill. App. 3d 275, 282, 387 N.E.2d 39, 44.) We believe that a finding of waiver under such circumstances would not be appropriate and that defendant should be allowed to raise the issue on appeal.

■■ It has been noted that the inquiry into the effect of representation of more than one party has received attention recently in opinions of courts of this State. (See *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671; *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644; *People v. Mathes* (1979), 69 Ill. App. 3d 275, 387 N.E.2d 39; *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169.) As the defense concedes, it is clearly established that joint representation of co-defendants does not create a *per se* violation of a defendant's right to effective counsel. There is no presumption that the interests of criminal co-defendants are necessarily hostile. (*People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644.) To prevail upon a claim of ineffective assistance of counsel, premised upon the joint representation by an attorney for co-defendants, a defendant " 'must show an actual conflict of interest manifested at trial .' " (*People v. Mathes* (1979), 69 Ill. App. 3d 275, 283, 387 N.E.2d 39, 44-45, quoting *People v. Berland* (1978), 74 Ill. 2d 286, 299-300.) If, however, an actual conflict of interest is established, then prejudice will be presumed to have resulted. (*People v. Echols* (1978), 74 Ill. 2d 319, 327.) A logical inquiry is the extent to which the interests of the co-defendants were conflicting.

It is clear from the record that the record in the instant case is not one where the defenses of the co-defendants were antagonistic. Neither defendant implicated the other in the crime. The record also reveals that defense counsel did not refrain from producing evidence or making arguments which would have benefited one defendant at the expense of the other. Asserting an actual conflict of interest between co-defendant brothers, appellate counsel focuses on three areas of the trial.

The defense argues that the trial counsel for Randall Hunt failed to use an available defense in his representation of Randall Hunt because of his commitment to co-defendant Terry Hunt. Specifically, appellate counsel states that independent trial counsel could have utilized a defense that Ratliff mistook Terry Hunt, defendant's brother, for defendant Randall Hunt. The record in this case, however, indicates that such defense was utilized by defense counsel on behalf of defendant Randall Hunt. The trial counsel, during the cross-examination of Ratliff, ably

pointed out the differences in the hair color between the two brothers, a comparison which was favorable to defendant Randall Hunt, in view of the initial description by Ratliff. That discrepancy was understandably and ably emphasized in closing argument by trial counsel. In addition, the quoted portion of trial counsel's closing arguments set forth previously in this opinion indicates that the defense did suggest to the jury that the man Ratliff saw at the door of the cafe may have been Terry Hunt and not Randall Hunt as Ratliff testified. It is notable that at the time of the closing argument, Randall Hunt was the sole defendant. Terry Hunt had been acquitted by the court at the close of the State's case. The trial defense counsel had no reason, in view of the acquittal of Terry Hunt, to protect his interests at the expense of his brother Randall, who was, at that time, the only defendant.

The second aspect of the trial, where appellate counsel contends that an actual conflict of interest exists between the defenses of the two co-defendants, is with respect to some physical evidence which the State sought to introduce. The State attempted to introduce gloves belonging to Terry Hunt, as well as articles of clothing belonging to Randall Hunt. These articles all apparently had a white chalky substance on them which, according to the State's contention, matched the substance on the door of the Three Sisters Cafe. Appellate counsel suggests that an independent counsel for Randall Hunt may not have objected to the introduction into evidence of Terry Hunt's gloves, for then such counsel would have been better able to argue that Terry Hunt was the person at the door of the cafe when Ratliff arrived. The argument fails to consider several important factors. Whatever action independent counsel for Randall Hunt would have taken, it is clear that any counsel for Terry Hunt would have objected to the introduction of the gloves. Thus, a failure to object by Randall's attorney would not have insured that the evidence would have been presented to the jury. It must also be noted that if Terry Hunt's gloves had been admitted into evidence, there would have been little basis, if any, for disallowing the clothing of Randall Hunt, which also contained the white substance. With the lack of scientific examination and comparison, it appears that the trial judge's ruling would have been the same whether the objections came from a single counsel representing both men or from individual counsel for each. We find no conflict of interest as to defendants as a result of these factors.

■■ A final area where appellate counsel asserts an actual conflict of interest is in defense counsel's failure to move for a mistrial after the court had granted a directed verdict of acquittal as to co-defendant Terry Hunt. (See *People v. Tibbs* (1978), 57 Ill. App. 3d 1007, 373 N.E.2d 624.) In *Tibbs* the court held that it was error to grant the directed verdict to one co-defendant. Then, emphasizing the "peculiar facts" of the case, it

held that counsel's failure to move for a mistrial, after the granting of the directed verdict, was also error. *Tibbs* is not controlling, and we do not believe that the allowance of a motion for mistrial would have been mandated in the instant case, nor do we perceive how a continuing obligation to the interests of Terry Hunt was a reason for defense counsel's failure to request a mistrial for Randall Hunt. Terry Hunt, as noted, had been acquitted by the court. As the State suggests, the decision not to seek a mistrial may well have resulted from technical considerations. If a mistrial had been granted, defense counsel at a subsequent trial would not have been able to argue as effectively that Ratliff was mistaken about the identity of the man seen. The jury, in this case, it must be noted, had seen both defendants together and had heard Ratliff on cross-examination waver in his description of the hair colors. The subsequent trial of Randall Hunt may have resulted in minimizing the impact of any such evidence. As we noted in *Mathes,* such matters of strategy do not furnish a basis for the court to hold that defendant Hunt was denied effective assistance of counsel. In reviewing the record, therefore, we find no actual conflict of interest resulting in denial of effective assistance of counsel. We find that counsel performed capably in representing the interests of both defendants.

■ The second issue which relates to the manner of sentencing and the election offered to defendant in this case has been considered and decided adversely to the defense contention in two recent cases in this court. (*People v. Peoples* (1979), 71 Ill. App. 3d 842; *People v. Wilfong* (1979), 72 Ill. App. 3d 268.) Those cases indicated clearly that there were no equal protection or due-process deprivations because defendant was not informed of the specific sentences which the court would impose under the old and new sentencing laws, prior to the election by defendant as to which law he wished the court to apply. We adhere to the position outlined in the two cases referred to, on this issue.

For the reasons stated, the judgment of the Circuit Court of Tazewell County, and the sentence imposed, are affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.