THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYFIELD AUSTIN, Defendant-Appellant.

First District (2nd Division)    No. 1—92—4368

Opinion filed October 18, 1994.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Robert F. Hogan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

A jury found defendant, Rayfield Austin, guilty of first degree murder and the trial court sentenced him to natural life in the Illinois Department of Corrections because he had also been convicted of second degree murder in Michigan. We affirm the conviction because the trial court did not commit plain error by giving jury instructions permitting the jury to return a verdict of guilty of murder without also signing a verdict acquitting defendant of involuntary manslaughter. We reverse and remand for resentencing because a second degree murder conviction in Michigan is not "substantially similar" to a first degree murder conviction in Illinois within the meaning of the list of aggravating factors in section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(b)).

On December 7, 1989, defendant brought his seven-week-old

daughter Raechel Austin to the hospital because she had stopped breathing. Raechel resumed breathing before she arrived at the hospital, but she remained in the hospital for four days for evaluation. Because of the marks on Raechel's face nurses called the Department of Children and Family Services (the Department) to investigate the possibility that Raechel had been abused. The Department approved the discharge of Raechel to her parents' care.

Raechel's mother, Melissa Austin, next left Raechel in defendant's care on December 22, 1989. Again defendant brought Raechel to the hospital because she stopped breathing. This time she did not resume breathing on her own. Raechel died on December 23, 1989. The pathologist determined that her death resulted from shaken baby syndrome, in which the baby's brain is severely damaged by violent shaking. Defendant admitted to police that he shook Raechel on December 7 and on December 22, 1989. The State charged defendant with first degree murder.

At trial the court instructed the jurors, at defendant's request, that they could find defendant guilty of murder, guilty of involuntary manslaughter, or not guilty of murder and involuntary manslaughter. The court, without objection, gave the jurors three verdict forms corresponding to the three possible verdicts. The court instructed the jurors that they should find defendant guilty of murder if they found that defendant's acts caused Raechel's death, and when he performed the fatal acts he knew that his acts created a strong probability of death or great bodily harm. If the jurors found that defendant acted recklessly, and his acts were likely to cause great bodily harm, the court told them to find defendant guilty of involuntary manslaughter. The court explained:

"A person is reckless or acts recklessly when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

The prosecutor in closing argument emphasized that, especially because of the prior incident in which Raechel stopped breathing, defendant knew that the severe shaking he gave Raechel on December 22 would result in great bodily harm or death. Defense counsel responded that defendant's acts showed no intention, and because of the favorable result of the first incident he did not even know that shaking the child was likely to cause great bodily harm. Defense counsel conceded that defendant's acts might amount to conscious disregard of a substantial risk, so the jury might find him guilty of involuntary manslaughter.

After nine hours of deliberation the jury found defendant guilty of first degree murder. The State sought the death penalty on the basis of defendant's conviction for second degree murder in Michigan in 1977. The trial court held that a second degree murder conviction in Michigan was substantially similar to a first degree murder conviction in Illinois. The jurors found defendant qualified for a death sentence, but they did not unanimously find "no mitigating factors." The trial judge indicated that he believed he was without discretion in sentencing, and he sentenced defendant to natural life in the Illinois Department of Corrections.

Defendant argues on appeal first that the court did not adequately instruct the jury because no instruction informed the jurors that by finding him guilty of murder they necessarily found him not guilty of involuntary manslaughter and the verdicts allowed the jury to return the murder verdict without expressly deciding whether he was guilty of involuntary manslaughter. The trial court did not give the final paragraph of Illinois Pattern Jury Instructions, Criminal, No. 26.01Q (3d ed. 1992), which states:

"Under the law, the defendant cannot be guilty of [first degree murder] and [involuntary manslaughter]. Accordingly, if you find the defendant guilty of [first degree murder], that verdict would mean that the defendant is not guilty of [involuntary manslaughter]. Likewise, if you find the defendant guilty of [involuntary manslaughter], that verdict would mean that the defendant is not guilty of [first degree murder]."

Defendant concedes that he did not offer the instruction he now seeks, and in the trial court he raised no objection to the instruction given, but he asks this court to review the issue as plain error.

The jurors found defendant guilty of first degree murder beyond a reasonable doubt, under instructions which correctly set forth all elements of that crime. This court need not speculate about a hypothetical jury's action; because the jury answered the proper question by application of the correct standards, the jury has supplied a verdict sufficient for review. (See *Sullivan v. Louisiana* (1993), 508 U.S. 275, 280, 124 L. Ed. 2d 182, 189-90, 113 S. Ct. 2078, 2082.) The court also correctly informed the jury of the elements of involuntary manslaughter, including its mental state.

■ An error in an instruction is harmless if the instructions, taken as a whole, fully and correctly inform the jurors of the questions they are to decide and the standards for deciding them. (See *People v. Parks* (1976), 65 Ill. 2d 132, 137-38, 357 N.E.2d 487; *People v. Knox* (1969), 116 Ill. App. 2d 427, 434-35, 252 N.E.2d 549.) The instructions here fully and correctly informed the jurors of the

issues, including the mental state required for each crime. The closing arguments further elucidated the correct distinction between involuntary manslaughter and first degree murder. Under the circumstances of this case, any error in the instructions did not amount to plain error.

■ Next, defendant contends that the court erroneously held him eligible for a natural life sentence on the basis of his 1977 second degree murder conviction in Michigan. According to section 5—8—1(a)(1)(b) of the Unified Code of Corrections, "if the court finds *** that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(b).) Section 9—1(b) includes as an aggravating factor:

> "the defendant has been convicted of murdering two or more individuals under subsection (a) of this Section or under any law *** of any state which is substantially similar to subsection (a) of this Section." Ill. Rev. Stat. 1991, ch. 38, par. 9—1(b)(3).

Our supreme court held that section 9—1(b) requires a comparative analysis of murder statutes to determine whether conduct which constitutes murder in the other State would constitute first degree murder in Illinois. (*People v. Guest* (1986), 115 Ill. 2d 72, 92, 503 N.E.2d 255.) The "aggravating-factor provision requires a substantial similarity between our statute as a whole and that of a foreign jurisdiction." (*Guest*, 115 Ill. 2d at 100.) The court's analysis in *Guest* shows that the defendant's actual conduct which constituted murder in the foreign State is irrelevant; the analysis focuses solely on the statutes and the range of conduct which could violate the statutes. *Guest*, 115 Ill. 2d at 92-102.

Section 9—1(a) of the Criminal Code provides:

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>> (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>> (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
>> (3) he is attempting or committing a forcible felony other than second degree murder." Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a).

The Michigan Penal Code provides:

> "Murder which is *** wilful, deliberate, and premeditated killing, or which is committed in the perpetration [of specified

felonies] ***, is murder of the first degree ***." (Mich. Comp. Laws § 750.316 (1991).)

"All other kinds of murder" count as second degree murder. (Mich. Comp. Laws § 750.317 (1991).) Defendant pled guilty to the charge of second degree murder in Michigan.

Defendant contends that his guilty plea in Michigan is not a basis for enhancing his sentence to natural life in prison under section 9—1(b) of the Criminal Code because second degree murder in Michigan is not "substantially similar" to first degree murder in Illinois. Illinois recognizes unreasonable belief that one is acting in self-defense as a mitigating factor which reduces a homicide to voluntary manslaughter[1] ; in Michigan, unreasonable belief in self-defense has no effect on murder charges. (*People v. Deason* (1985), 148 Mich. App. 27, 31, 384 N.W.2d 72, 74.) As the Michigan court observed:

> " 'Imperfect self-defense' is a qualified defense which can mitigate an act of second-degree murder to voluntary manslaughter. [Citation.] This qualified defense has been invoked elsewhere than in Michigan where a defense of self-defense fails because the defendant was the aggressor, or maintained an unreasonable belief of danger, or reacted with an unreasonable amount of force. [Citation.]
>
> Although the doctrine of imperfect self-defense has been codified in several jurisdictions (see *e.g.*, Ill. Rev. Stat. 1969, ch. 38, [par.] 9—2[b]) and is recognized in the Model Penal Code [citation], the doctrine has not been explicitly recognized in Michigan to the extent urged by defendant in this case. The doctrine has been applied only where the defendant would have had a right to self-defense but for his actions as the initial aggressor." (*Deason*, 148 Mich. App. at 31-32, 384 N.W.2d at 74.

The court in *Deason* held that the defendant could not raise his unreasonable belief that he was acting in self-defense as a factor reducing his crime from second degree murder to voluntary manslaughter because his alleged unreasonable belief that he was acting in self-defense did not constitute a defense to the murder charges in Michigan.

Consequently, in Michigan a person who commits a homicide with an unreasonable belief the acts are needed for self-defense can be guilty of second degree murder. The same conduct with the same

---

[1]In 1987 the Illinois legislature changed the offense of voluntary manslaughter to second degree murder. (See Ill. Rev. Stat. 1985, ch. 38, par. 9—2; Ill. Rev. Stat. 1989, ch. 38, par. 9—2.) To prevent confusion with the Michigan statute, we will refer to Illinois second degree murder as voluntary manslaughter.

belief in Illinois would constitute voluntary manslaughter, not first degree murder.

The question for this court, then, is whether this difference between Illinois and Michigan laws suffices to render second degree murder in Michigan not "substantially similar" to first degree murder in Illinois within the meaning of section 9—1(b) of the Criminal Code. In *Guest* the defendant argued that in California, as in Michigan but not Illinois, unreasonable belief one is acting in self-defense has no effect on murder charges. (*Guest*, 115 Ill. 2d at 98.) Our supreme court found that California, by judicial decision, treated as voluntary manslaughter those homicides committed in an unreasonable belief one is acting in self-defense, so the law in California is the same as Illinois law, and different from Michigan law, in this respect. *Guest*, 115 Ill. 2d at 98.

Our supreme court later emphasized the need for the same *mens rea* for murder under the Illinois statute and the foreign statute. In *People ex rel. Daley v. Strayhorn* (1988), 121 Ill. 2d 470, 486, 521 N.E.2d 864, the court summarized *Guest*, stating that in *Guest* it "found that California's statute required a mental state for murder equivalent to that required in Illinois."

To convict a defendant in Illinois of first degree murder, the State must prove that the defendant either intended or knew that great bodily harm or death would result from his conduct. Such a mental state would also support a conviction for second degree murder in Michigan. However, the defendant in Illinois can avoid the first degree murder conviction, and have the crime reduced to voluntary manslaughter, if the defendant can prove, as a mitigating factor, that along with the mental state for first degree murder he also had the mitigated mental state of an unreasonable belief that the fatal acts constituted self-defense. (*People v. Newbern* (1991), 219 Ill. App. 3d 333, 353, 357, 579 N.E.2d 583.) With the equivalent mental state, the defendant in Michigan remains guilty of second degree murder. *Deason*, 148 Mich. App. at 32, 384 N.W.2d at 74.

■ Because of the different effects of an unreasonable belief one is acting in self-defense, the Michigan second degree murder statute and the first degree murder statute in Illinois are not "substantially similar" within the meaning of section 9—1(b) of the Criminal Code. Defendant's conviction for second degree murder in Michigan did not constitute an aggravating factor sufficient to support imposition of a natural life sentence under section 5—8—1(a)(1)(b) of the Unified Code of Corrections. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(b).

For the foregoing reasons, defendant's conviction is affirmed, his sentence is vacated and the cause is remanded for resentencing.

Affirmed in part; vacated in part and remanded.

HARTMAN and SCARIANO, JJ., concur.